IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| Philomena DeHoyos | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff*, | § | Civil Action No: |
| | § | |
| *versus* | § | 5:22-cv-138 |
| | § | |
| Randolph-Brooks Federal Credit Union | § | |
| | § | |
| *Defendant*. | § | |

Plaintiff's Original Complaint

———————————

Introduction

1. The primary purpose of the Electronic Funds Transfer Act, as provided by Congress is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights."

2. This action arises out of violations of the Electronic Funds Transfer Act ("EFTA") 15 U.S.C. § 1693 *et seq.* and its implementing Regulation E, by Defendant and its agents in their illegal transfer of funds from Plaintiff's bank account.

3. Plaintiff seeks actual damages, statutory damages, costs, and attorney fees.

## Jurisdiction

4. Jurisdiction of this Court arises under 15 U.S.C. § 1693m, 28 U.S.C. § 1331 under federal question jurisdiction, and 28 U.S.C. § 1367 for related state law claims.

5. Venue is proper due to the acts and transactions having occurred here. Plaintiff resides in this jurisdiction and Defendant transacts business here.

6. Defendant has transacted business within this District and Division by providing banking services to Plaintiff via mail, telephone, and internet services while Plaintiff was located within and permanently residing in this District and Division.

## Parties

7. Plaintiff, Philomena DeHoyos (hereinafter "DeHoyos") is a natural person who resides in Bexar County, Texas.

8. DeHoyos is a "consumer" as that term is defined by 15 U.S.C. § 1693a and 12 CFR § 1005.2(e).

9. Randolph Brooks Federal Credit Union (hereinafter "RBFCU") is a federal credit union headquartered at One Randolph Brooks Parkway, Live Oak, Texas 78233. It may be served with process via its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

10. RBFCU is a "financial institution" as defined by 15 U.S.C. § 1693a(9).

11. DeHoyos has suffered an injury in fact that is fairly traceable to RBFCU's conduct and there is a high likelihood that the injury can be redressed by a favorable finding by the Court.

Background

12. DeHoyos enjoyed a banking relationship with RBFCU prior to and during February 2021.

13. On or around Sunday, February 21st, 2021, Philomena DeHoyos checked her bank account, much to her surprise she noticed several transactions on her account that she did not recognize.

14. She immediately disputed as many of the charges as she could. Since some were still pending, she was not able to dispute all of them immediately.

15. The next day, on Monday the 22nd, she contacted RBFCU and disputed each of the unauthorized charges.

16. On her billing statement, Ms. DeHoyos could see the addresses where the transactions were made. She was alarmed to see that they were nowhere near her.

17. Ms. DeHoyos uses a smartphone app that tracks her vehicular travels, whether or not she is driving.

18. Ms. DeHoyos' made trips on the 19th and 21st which were recorded by the app. The app matches her recollection; she did not travel on the 20th, or the 22nd.

19. The transactions that Ms. DeHoyos dispute range from the 19th to the 22nd of February.

20. Mapping the locations of the unauthorized transactions next to her location from February 19th to the 21st shows she was not at, much less, in range of those locations.

21. Ms. DeHoyos' travel, as reported by the app, was on the outer edge of the city along 1604.

22. The unauthorized transactions happened inside or just outside of Loop 410 that encircles the inside of San Antonio (also known as the Connally Loop[1]).

23. Shown in the map below, Ms. DeHoyos' travels are in blue, while the unauthorized transactions are in Red.

[2]

24. It was physically impossible for Ms. DeHoyos to have conducted the unauthorized transactions.

25. In response to Ms. DeHoyos' disputes, RBFCU responded that its investigation concluded transactions were authorized.

---

[1] https://www.interstate-guide.com/i-410-tx/

[2] Map generated by Google, Inc.

26. Confused, Ms. DeHoyos escalated her dispute.

27. She filed a complaint with the NCUA (National Credit Union Association).

28. This dispute was forwarded by NCUA to RBFCU.

29. Once again, after a second "investigation," RBFCU found these transactions to have been authorized by DeHoyos.

30. These unauthorized transactions totaled $2,853.41.

Factual Allegations

*Defendant violated the Electronic Funds Transfers Act*

31. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

32. Defendant failed to conduct a good faith investigation into the Plaintiff's disputes, as required by, and in violation of, the Electronic Funds Transfer Act. 15. U.S.C. § 1693g.

33. Defendant failed to notify the Plaintiff that upon request, documents used in their investigation would be made available to them as required by, and in violation of, the Electronic Funds Transfer Act. 15 U.S.C. § 1693f(d).

34. Defendant engaged in numerous unfair acts and practices by withdrawing payments in variable amounts from Plaintiff's bank account without a valid authorization, and thereafter refusing to return these fraudulently withdrawn funds in violation of the Electronic Funds Transfer Act.

*Defendant did not Investigate Plaintiff's Claims*

35. Defendant did nothing in good faith to investigate this claim of fraudulent account activity.

36. Defendant also did not provisionally recredit all the funds disputed as fraudulent while it was undertaking its inadequate investigation into Plaintiff's dispute.

37. Defendant's response to Plaintiff's initial dispute were vague and inadequate.

38. Defendant's "investigative" response to Plaintiff's NCUA dispute was grossly inadequate.

39. In these findings RBFCU speculates that the unauthorized activity seemed "anticipated" since it took Ms. DeHoyos 24 hours to report the transactions.[3]

---

[3] RBFCU's statement concerning a 24-hour delay is unusual, in that the EFTA contemplates notification of unauthorized access or use within two days. 12 CFR § 1005.6(b)(1).

40. RBFCU's letter also stated that since Ms. DeHoyos' account reflects that $4,000 had been transferred from savings, that was done to fund the unauthorized transactions.

41. Defendant made speculative assertions as to these factors and do not provide a reasonable conclusion.

42. Had it conducted a proper investigation in good faith, working with Ms. DeHoyos, RBFCU would have known that Ms. DeHoyos was nowhere near the sites of this unauthorized activity.

43. Had RBFCU requested the records from the merchants where the transactions occurred, it would have found that she did not commit these transactions.

44. Defendant has no reasonable basis to conclude that these unauthorized transfers were anything other than unauthorized. Ms. DeHoyos even went so far as filing a police report on these unauthorized transfers.

   *Transfers made Fraudulently are Unauthorized under EFTA*

45. Under the Definitions in 15 U.S.C. § 1693a, an unauthorized transfer means "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual

authority to initiate such transfer and from which the consumer receives no benefit…"

46. The Official Staff Interpretations of the EFTA specifically state that victims of robbery or fraud who have their funds fraudulently transferred are not liable for those transfers under EFTA because they are "unauthorized" funds transfers:

> "**Access device obtained through robbery or fraud.** An unauthorized EFT includes a transfer initiated by a person who obtained access device from the consumer through fraud or robbery."
>
> 12 C.F.R. § 1005, Supp. I., § 2(m)(3) [emphasis in original].

## Causes of Action

### I. *Violation of the Electronic Funds Transfer Act and Regulation E*

47. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. The conduct of Defendant constitutes numerous and multiple violations of EFTA and Regulation E including, but not limited to, each and every one of the above-cited provisions of the EFTA and Regulation E. 15 U.S.C. § 1693 *et seq.* 12 CFR 1005.11.

49. As a result of Defendant's violations of the EFTA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A); treble damages under 15 U.S.C. § 1693m(a)(3) from Defendant.

50. Electronic funds transfers are subject to the requirements designed to protect consumers like Plaintiff from fraudulent, unauthorized transfers made without the consumer's consent.

51. Defendant failed to notify Plaintiff that she could request the investigative paperwork used by Defendant in their findings, as required by the EFTA.

52. Defendant failed to conduct a good faith investigation into Plaintiff's dispute, as required by the EFTA.

53. Plaintiff has suffered damages due to Defendant's EFTA violations.

54. Pursuant to 15 U.S.C. § 1693f(e) and 1693m, Plaintiff seeks statutory damages, actual damages, treble damages, and reasonable costs and attorney's fees from Defendant.

## II. *Conversion*

55. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

56. Texas law has defined conversion as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights. *Robert M. Bandy Adm. V. First State Bank*, 835 S.W.2d 609 (Tex. 1992).

57. The elements of conversion are:
    a. the plaintiff owned or had possession of the property or entitlement to possession;
    b. the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and
    c. the plaintiff demanded return of the property and (4) the defendant refused to return the property. *Universal Plant Servs. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346 (Tex. App. Houston 2018).

58. Plaintiff had possession of the $2,853.41, as it was her own personal funds. She held these funds in bank accounts held by Defendant.

59. Defendant assumed and exercised control over the property by taking the funds out of Plaintiff's account without her authorization and refusing to return the funds in violation of the obligations it has under the EFTA.

60. By disputing the unauthorized transactions, Plaintiff demanded the return of her property.

61. Defendant has since refused to return the property.

62. The amount of damages under a conversion action in Texas is the fair market value of the property at the time and place of conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146 (Tex. 1997).

63. Plaintiff is entitled to damages in an amount equaling the value of the property at the time and place of conversion.

### III. Negligence

64. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65. Texas law has defined Negligence as the "failure to use ordinary care-failing to do what a reasonable person like the defendant would have done under the same or similar circumstances-to protect against unreasonable risk of harm." *UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98 (Tex. 2017).

66. The elements of a negligence claim are:
    a. the Defendant owed a duty;
    b. the Defendant breached that duty;
    c. the Defendant's breach proximately caused the injuries suffered; and

d. damages resulted from this breach.

67. The Defendant owed Plaintiff a duty to perform a Good-faith investigation.

68. Defendant breached that duty by not fully investigating the unauthorized transfers.

69. By not fully investigating the claim, defendant caused Plaintiff's damages by allowing her to pay for fraudulent, unauthorized transfers.

70. This breach caused Plaintiff actual damages.

## Trial by Jury

71. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## Prayer for Relief

Wherefore, Plaintiff prays that judgment be entered against Defendant:

a) For a judgment and decree that Defendant has engaged in the conduct alleged above, entering Judgment in favor of Plaintiff;

b) For an award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) against Defendant;

c) For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A) against Defendant;

d) For an award of treble damages pursuant to 15 U.S.C. § 1693f(e) against Defendant;

e) For an award of costs and litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692m(a)(3) against Defendant;

f) For an award of actual damages totaling the value of the property at the time the conversion happened, $2,853.41;

g) For an award of actual and compensatory damages for Negligence in a reasonable amount to be determined by a jury, against Defendant;

h) For an award of both pre-and post-judgment interest at the maximum allowable rate on any amounts awarded;

i) and for such other and further relied as may be just and proper.

Dated: February 16, 2022

Respectfully submitted,

/s/William M. Clanton  
William M. Clanton  
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.  
926 Chulie Dr.  
San Antonio, Texas 78216  
210 226 0800  
210 338 8660 fax  
bill@clantonlawoffice.com